IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:26CR160 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| GRANT T. WILCOX, | ) | RESPONSE IN OPPOSITION TO |
| | ) | DEFENDANT'S |
| Defendant. | ) | MOTION TO SUPPRESS |

Now comes the United States of America, by and through the undersigned counsel and respectfully submits the following Response to Defendant's Motion to Suppress. *See* ECF # 23: Motion, PageID 81-87. Because the search warrant at issue was supported by probable cause, Defendant's motion should be denied without a hearing.

## I. Factual Background

On March 5, 2026, Postal Inspector Michael Adams of the United States Postal Inspection Service (USPIS) identified a parcel inbound to the Northern District of Ohio as one likely to contain controlled substances based upon postage for the parcel being paid through a particular third-party postage provider which was known by Postal Inspector Adams and other investigators to be commonly used by persons sending controlled substances through the U.S.

Mail. The parcel was addressed to Defendant at his residence in Windham, Ohio. The parcel arrived at the United States Postal Service (USPS) Akron Processing Distribution Center on March 6, 2026, where Postal Inspector Adams took custody of it and transported it to the USPIS Cleveland Field Office for further investigation. Using the CLEAR database, Postal Inspector Adams was able to associate Defendant's name with the recipient address on the package, but was unable to associate the sender's name, "Diesel Esparza," with the return address on the parcel, which purported to be a location in Carson City, Nevada. Additionally, Postal Inspector Adams found that the specific address – "3626 E L St, Carson City, NV 89701" – does not exist in USPS records, and was a fictitious address.

The parcel was placed in a lineup of other similar parcels which did not contain controlled substances, and a drug-detection K9 from the Cuyahoga County Sheriff's Office was allowed to examine the parcels. After the K9 alerted only to the parcel addressed to Defendant, Postal Inspector Adams obtained a federal search warrant to open the parcel and found it to contain approximately 140 grams of methamphetamine pills.

Postal records also showed that Defendant had received approximately 46 other similar packages since March 2025, which were paid for using the same known third-party postage provider and originated from known drug source locations, including California and Nevada. Postal records also showed that one or more persons had tracked the March 5 parcel approximately 400 times while it was in transit, using one or more virtual private networks (VPNs), which are commonly used to conceal the actual location of an Internet Protocol (IP) address so that a user's online activity is more difficult to trace to a geographic location.

In preparation for a controlled delivery of the parcel by law enforcement, investigators removed the methamphetamine pills from the parcel and replaced them with non-controlled

sham pills. On March 9, 2026, at approximately 7:00a.m., Defendant arrived at the Windham, Ohio, post office, knocked on the door, and asked about the parcel, but was told to come back during business hours. Shortly after 9:00a.m., investigators conducting surveillance observed Defendant exit his residence, enter his Chevrolet pickup truck, and depart. Approximately three minutes later, Defendant again arrived at the post office. An undercover postal inspector provided the parcel to Defendant, who returned to his vehicle and departed with the parcel. Investigators followed Defendant to a Circle K gas station, where he appeared to be watching vehicles to detect surveillance. Defendant then drove back to the area of his residence by a circuitous route, drove past his house twice, then returned to the post office at approximately 9:40a.m. Upon entering the post office, Defendant placed the parcel on the counter and, without questioning by USPS staff or investigators, stated that he did not recognize the sender and the package was not his. Investigators detained him and seized his unlocked cellular phone, which had a live video feed of the doorbell camera at his residence on the screen.

After Defendant was taken into custody, investigators obtained a warrant to search his residence. The warrant was supported by an affidavit from Postal Inspector Adams and was signed by United States Magistrate Judge Carmen E. Henderson. (Government Exhibit 1.) The warrant authorized investigators to search for and seize evidence of drug trafficking, including U.S. Currency greater than $500, records regarding financial transactions or trafficking drugs, travel documents, photographs, firearms, identification documents, controlled substances, materials used in preparing or packaging controlled substances, and electronic devices, specifically including any device capable of accessing the internet and "which may contain records of inquiries into delivery of USPS parcels[.]" (*Id.*, Att. B.) The warrant noted, however, that any seized electronic devices could only be searched pursuant to a subsequent warrant

establishing probable cause for the particular device(s). (*Id.*) Investigators from USPIS and the Portage County Drug Task Force executed the warrant the same day, seizing several electronic devices and miscellaneous documents from Defendant's residence.

On March 9, 2026, Defendant was charged by criminal complaint with attempted possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. ECF # 1: Complaint, PageID 1-11. On April 1, 2026, a grand jury for the Northern District of Ohio returned an indictment charging Defendant with attempted possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii), and 846. ECF # 10: Indictment, PageID 34-35. On June 29, 2026, Defendant filed the instant motion to suppress challenging the validity of the search warrant that authorized the search of his residence. ECF # 23: Motion, PageID 81-87.

## II. Validity of the Search Warrant

The Fourth Amendment to the United States Constitution guarantees that "no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. An affidavit used to establish probable cause must provide the issuing magistrate with a substantial basis for determining the existence of such probable cause. *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010). The standard of review for determining the sufficiency of the affidavit is whether the issuing judge had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited in the affidavit. *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003); *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985). "Courts should review the sufficiency of an affidavit underlying a search warrant in a commonsense, rather than hypertechnical, manner."

*United States v. Miller*, 314 F.3d 265, 269 (6th Cir. 2002) (citing *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986)). "The task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984); *see also Illinois v. Gates*, 462 U.S. 213, 231-38 (1983). When making a probable cause determination, a court is limited to the four corners of the affidavit. *United States v. Rose*, 714 F.3d 362, 366 (6th Cir. 2013). An affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added. *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000).

Once a search warrant has been issued, "great deference" is due when reviewing a judicial officer's determination of probable cause. *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013); *United States v. Calloway*, 116 F.3d 1129, 1132 (6th Cir. 1997) (absent clear error, magistrate judge's determination of probable cause must not be reversed), *cert. denied*. A reviewing court, therefore, "may only reverse a magistrate's decision to grant a search warrant if the magistrate arbitrarily exercised his or her authority." *Brown*, 732 F.3d at 573. This deferential review is consistent with "the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

**A. The Search Warrant Was Supported by Probable Cause.**

Defendant alleges that the warrant to search his residence was invalid because it failed to establish a nexus between his residence and evidence of drug trafficking. But a review of Postal Inspector Adams' affidavit demonstrates that this argument is entirely without merit.

The affidavit supporting a search warrant should demonstrate a nexus between the place to be searched and the evidence sought. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.

2004). In the instant case, there was a substantial basis for the issuing United States Magistrate Judge to find probable cause to believe that evidence related to drug trafficking, and particularly evidence related to the March 5 parcel containing methamphetamine pills, would be found at Defendant's residence. Postal Inspector Adams detailed the sequence of events by which he and other investigators had identified and interdicted the parcel and discovered the methamphetamine pills. (Gov. Ex. 1, ¶¶ 16-46.) In particular, the affidavit described the extensive use of internet-connected electronic devices involved in paying for and tracking the parcel. Postal Inspector Adams stated that one of the distinguishing suspicious characteristics of the parcel was that its postage was paid for using a particular third-party provider which accepted cryptocurrency as payment and which was known to him to be used frequently in the sending of illegal drugs through the mail. (*Id.*, ¶ 17, 25, 27-28.) Further, he noted that he had personally interdicted parcels using the same postage provider, all of which had contained illegal drugs, proceeds, or other contraband, and that USPIS investigators in the Northern District of Ohio had never interdicted a parcel using this postage provider which did not contain contraband. (*Id.*, ¶¶ 17, 28.) Postal Inspector Adams added that, based on his training and experience, he knows that the use of cryptocurrency to pay for postage is common among those sending drugs through the mail because it makes the financial transaction more difficult to trace than a credit or debit card purchase. (*Id.*, ¶ 27.) Additionally, Postal Inspector Adams averred that his review of USPS records showed that one or more persons had tracked the March 5 parcel approximately 400 times while it was in transit, using one or more VPNs. (*Id.*, ¶ 35.)

The affidavit also established that, based on surveillance, Defendant traveled directly from his residence to the post office to retrieve the parcel, then attempted to return to his residence after a brief stop at a gas station, but abandoned that plan, presumably because he

became aware of surveillance in the area of his residence, and returned to the post office. When Defendant was detained at the post office, investigators observed a live video feed on his cellular phone from his doorbell camera, which confirmed that there was internet connectivity at Defendant's residence.

Under the totality of the circumstances, the affidavit established probable cause to believe that Defendant was involved in having the March 5 parcel shipped to him using the third-party postage provider; that Defendant was the person (or one of the persons) who tracked the parcel using a VPN, given his appearance at the post office at 7:00a.m. to obtain it; that evidence of such shipment and tracking would be found on Defendant's electronic devices; and that such devices would be found in Defendant's residence, where he had departed prior to going to the post office and apparently intended to return with the parcel. Thus, Postal Inspector Adams' affidavit clearly established a nexus between Defendant's residence and the evidence sought by the warrant.

Defendant attempts to show that the warrant was invalid by comparing the instant case to those in which courts have found warrants insufficient for merely relying on the defendant's status as a known drug dealer to establish a nexus to his residence without establishing any particular connection between evidence of the defendant's drug trafficking and his residence. *See* ECF # 23: Motion, PageID 84 (citing *United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016) and *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). But the insufficient warrants in those cases are easily distinguishable from the warrant in this case. In *Frazier*, for example, "the warrant affidavit [was] based almost exclusively on the uncorroborated testimony of unproven confidential informants (none of whom witnessed illegal activity on the premises of the proposed search)," and "the allegation that the defendant [was] a drug dealer[.]" 423 F.3d at

533. Likewise, in *Brown*, the warrant affidavit relied on the defendant's status as a known drug dealer but "contained no evidence that Brown distributed narcotics from his home, that he used it to store narcotics, or that any suspicious activity had taken place there." 828 F.3d at 382.

By contrast, Postal Inspector Adams' affidavit does not rely on any informant information. Nor does he claim that Defendant is a known drug dealer or endeavor to search Defendant's residence merely as a probable "stash house." Rather, the affidavit in this case gave a detailed account of a limited investigation of a particular parcel containing methamphetamine, addressed to Defendant at his residence, picked up by Defendant from the post office, and intended to be brought back to Defendant's residence. It then set forth information which was learned through that investigation, particularly regarding the significance of the postage provider and the extensive online tracking of the parcel. Based upon that information and Defendant's direct connection to the parcel (and 46 previous similar parcels), the affidavit provides a clear basis upon which the issuing magistrate could find probable cause to believe that evidence related to the drug parcel would be found in Defendant's residence, particularly on electronic devices located there. Defendant's arguments to the contrary and his citations to *Frazier*, *Brown*, and similar cases are without merit and do not support his motion.

Accordingly, Defendant's motion to suppress evidence recovered during the execution of that warrant must be denied.

**B. Law Enforcement's Good Faith Reliance on the Warrant**

If the Court disagrees with the United States and finds that the search warrant affidavit lacked probable cause, the United States respectfully requests that the Court find that the law enforcement officers acted in good faith and reasonably relied on the search warrant issued by the magistrate judge in this case.

In *United States v. Leon*, the Supreme Court identified four scenarios where an officer's reliance on the warrant is not objectively reasonable: (1) when the affidavit contains false information that the affiant either knew or should have known was false; (2) when the issuing magistrate abandons neutrality and serves as a rubber stamp for police activities; (3) when the affidavit is bare bones and severely lacks in indicia of probable cause; and (4) when the warrant is so "facially deficient" that it cannot be presumed to be valid. *United States v. Leon*, 468 U.S. 897, 905 (1984). Under *Leon*, where officers rely in an objectively reasonable fashion on a search warrant issued by a neutral magistrate that is subsequently found to be invalid, the Fourth Amendment exclusionary rule does not require suppression of the fruits of the search. *United States v. Bowling*, 900 F.2d 926, 931 (6th Cir. 1990).

If the warrant affidavit contains a "minimally sufficient nexus" between the illegal activity and the place to be searched, suppression is not warranted. *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004). The Sixth Circuit has observed that "[a] 'minimally sufficient nexus' is not a high bar[,]" and requires only "a modicum of evidence, however slight connecting the illegal activity and the place to be searched." *United States v. Neal*, 106 F.4th 568, 572 (6th Cir. 2024) (internal quotations omitted). That Court describes as "'bare bones' only [] those affidavits that consist of no more than a hunch that evidence might be found at a location." *Id*. Such is the case for an affidavit that "states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge[.]" *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998). The warrant affidavit in the instant case does not fit this definition, as Postal Inspector Adams alleged facts, not mere suspicions, provided the basis of knowledge for each piece of information alleged, and tailored the evidence sought to the facts uncovered by his investigation of the March 5 parcel.

The United States believes that there was sufficient evidence contained in the affidavit to support the issuance of the search warrant. The work of the investigators in this case was detailed, professional, and founded on sound investigative techniques. The affidavit presented to the United States Magistrate Judge to support the search warrant was not so bare bones or conclusory so as to render law enforcement's reliance upon the issued warrant unreasonable. If the Court should find, however, that the warrant was not supported by probable cause, the United States respectfully requests that the Court find that investigators relied in an objectively reasonable fashion on the search warrant issued by the Magistrate Judge and that the exclusionary rule does not apply.

For the reasons stated above, the United States of America respectfully requests that this Court deny Defendant's Motion to Suppress.

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

By: /s/ Peter E. Daly

Peter E. Daly (OH: 0084745)
Assistant United States Attorney
Federal Building
2 South Main Street, Room 208
Akron, OH 44308
(330) 761-0529
(330) 375-5492 (facsimile)
Peter.Daly@usdoj.gov